

Jonathan A. Bernstein, Partner
Writer's Direct: (917) 693-7245; jb@lijblaw.com

January 11, 2022

**By ECF**

The Honorable Paul A. Engelmayer
United States District Judge
United States Court House
Southern District of New York
500 Pearl Street
New York, New York 10007

                                Re:    Moraes v. White,
                                            21 Civ. 4743 (PAE)

Dear Judge Engelmayer:

       We represent Barbara Moraes, the Plaintiff in this matter. Following extensive correspondence and an unsuccessful meet-and-confer, I write pursuant to Paragraph 2(C) of Your Honor's Individual Rules and Practices in Civil Cases to seek a protective order in advance of Ms. Moraes's deposition (scheduled for January 19).

       Briefly, we seek an order prohibiting Defendants from subpoenaing or otherwise contacting Ms. Moraes's current employer, as well as excusing Ms. Moraes from answering deposition questions directed at eliciting her employer's identity. In our view, the information sought by Defendants is irrelevant to any issue in this litigation. Even where such evidence is relevant (typically to mitigation of damages), courts within this circuit have long rejected defendants' attempts to serve subpoenas on plaintiffs' current employers, especially where, as here, the information purportedly sought is otherwise obtainable. *Warnke v. CVS Corp.*, 265 F.R.D. 64, 69 (E.D.N.Y. 2010) (*citing Conrod v. Bank of N.Y.*, 1998 U.S. Dist. LEXIS 11634 (S.D.N.Y. Jul. 30, 1998) *and Gambale v. Deutsche Bank AG*, 2003 U.S. Dist. LEXIS 27412 (S.D.N.Y. Jan. 10, 2003)); *Morales v. Pepsi Co.*, 2018 U.S. Dist. LEXIS 137424, at * 9 (W.D.N.Y. Aug. 14, 2018) ("because of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort").

       On November 12, 2021, Defendants propounded an interrogatory seeking the name and contact information of Ms. Moraes's current employer. On December 10, we objected to the Interrogatory as irrelevant and added that "[n]otwithstanding that objection, Plaintiff will answer the Interrogatory upon execution of a stipulation that Defendants, their agents and counsel will

1250 Broadway · 36th Floor · New York · New York 10001
2108 Yardley Road · Yardley · Pennsylvania 19067
Tel 215·493·1980 | 929·274·1151 | Fax 917·210·3898
info@lijblaw.com | www.lijblaw.com

make no attempt to subpoena or otherwise contact Plaintiff's present employer." On December 17, defense counsel wrote me that the information was relevant because: (1) it is relevant to the calculation of defamation damages; (2) Defendants are entitled to test whether Plaintiff's emotional distress disrupted her ability to work and (3) Plaintiff's claims open her to "unavoidable disruptions," including Defendants contacting her current employer. That letter is annexed as Exhibit 1 (discussion of Interrogatory No. 9 on page 3).

On December 23, I responded that (1) Plaintiff does not seek economic damages for defamation; (2) Plaintiff does not allege in this action that her emotional distress rendered her unable to work during the applicable period and (3) courts, citing the *in terrorem* effect on an employment plaintiff of a subpoena to her current employer, regularly issue protective orders precluding the contact. That letter is annexed as Exhibit 2 (discussion of Interrogatory No. 9 on pp. 2-3). That letter added (in the discussion of Interrogatory No. 10 on page 3) that information regarding earnings at Plaintiff's subsequent employment would be relevant had Defendants pleaded failure to mitigate damages, but they did not.

On January 10, defense counsel emailed me that he intended to notice Ms. Moraes's current employer for deposition. On January 11, he wrote me that Defendants seek five categories of information: (i) the timing of Plaintiff's hiring; (ii) Plaintiff's earnings from her employment; (iii) what Plaintiff said to her current employer about her past employment by Defendants and by Jillian Cohen and the reasons that employment ended; (iv) the impact, if any, of Defendants' actions on the decision to hire Plaintiff; and (v) whether or not Plaintiff has displayed any signs of the emotional distress that she claims to have suffered as a result of Defendants' conduct. That letter is annexed as Exhibit 3.

Later that morning, Mr. Robinson and I conferred for some 20 minutes. I reiterated that (i) and (ii) are not relevant unless Defendants plead failure to mitigate. Nevertheless, I produced a redacted copy of Ms. Moraes's current employment contract showing the date of her hire and the rate of pay. My cover letter to Mr. Robinson is annexed as Exhibit 4.

Category (iii) is not relevant to any claim or defense in this action; Defendants more likely seek to elicit information that Ms. Moraes did not tell what Defendants regard as the truth regarding her separation from employment with the White and Cohen families. If that were sufficient justification for direct contact with a plaintiff's current employer, then *Warnke, Conrod, Gambale* and *Morales* (cited on Page 1 above) would not have been decided as they were. As for Category (iv): Plaintiff does not claim in this action that Defendants' actions had any impact on her current employer's willingness to hire her. She will testify at deposition that Defendants drove her from Chelsea, but her current job, outside of Chelsea, is beyond the reach of Defendants' defamatory communications. As for Category (v): Defendants cite no authority in support of their propositions that an employer's inability to notice his employee's emotional distress is probative of the existence of that distress or that an emotional distress claim is subject to challenge merely because the claimant did not open her heart to her employer as she would to a friend, relative or therapist.

Plaintiff's current employer is not identified in Initial Disclosures as a witness to her emotional distress. Defendants have made no move to depose any of the 15 emotional distress witnesses identified in Plaintiff's Initial Disclosures.

      Materials produced in discovery make it clear that Defendant Mackenna White investigated the possibility of having Ms. Moraes deported and that she applauded efforts to render Ms. Moraes unemployable. Text messages so demonstrating are annexed as Exhibit 5.

      At best, the interrogatory and subpoena are fishing expeditions. It is implausible that Defendants genuinely seek the information in categories (i)-(v); it is more plausible that (i)-(v) are post hoc justifications for Defendants' attempt to abuse the litigation process by making Ms. Moraes's life more difficult with no commensurate litigation benefit.

      Plaintiff accordingly seeks a protective order. Plaintiff's counsel can be available for a telephone conference with the Court at any time between now and January 18 (except January 14 10:00-11:00 a.m.).

      Respectfully submitted,

/s/

Jonathan A. Bernstein

Defendants' response is due January 14, 2022.  SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge
January 12, 2022